**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEN WATERHOUSE, RON UBALDI,
NAPA OLYMPIA I, LLC, WATERHOUSE
MANAGEMENT, INC., and NAPA
OLYMPIA,

        Plaintiffs,

  v.

CITY OF AMERICAN CANYON,

        Defendant.

                          /

No. C 10-01090 WHA

**ORDER GRANTING PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTIONS FOR
JUDGMENT ON THE PLEADINGS OR
SUMMARY JUDGMENT AND TO
EXCLUDE EVIDENCE**

**INTRODUCTION**

The City of American Canyon is forcing the owners of a mobile-home park to

discriminate on the basis of familial status through a series of city ordinances. This violates the

federal Fair Housing Act. The housing for older persons exemption does not apply, as the

mobile-home park in question has not adhered to policies and procedures that demonstrate an

intent to qualify for the exemption or maintained procedures to verify occupancy. Plaintiffs'

motion for partial summary judgment is **GRANTED**, and defendant's motion for judgment on the

pleadings or summary judgment and to exclude evidence are **DENIED**.

**STATEMENT**

The City of American Canyon has been incorporated since 1992. It has accordingly

"adopt[ed] a comprehensive, long-term general plan for the physical development of the [city],"

and "[i]mplement[ed] [a] general plan through actions including, but not limited to, the

**United States District Court**
For the Northern District of California

1   administration of specific plans and zoning and subdivision ordinances." Cal. Gov't Code §

2   65300 and 65103(b); (Barr Decl. Exh. 3).

3          Plaintiffs own and manage a 201-unit mobile-home park in the City of American

4   Canyon named Napa Olympia Mobilodge.  The record contains selective periodic park rules

5   and regulations.  Beginning in 1988 such rules in the record contain a description of the park as

6   a "park for older persons[,] 55 years & older," with "at least 85% of the households within the

7   Park [to] be occupied by at least one person age 55 years or older" (Rule 2, Ross Decl. Exh. 2;

8   Garcia Decl. Exhs. 1–2).  Plaintiffs assumed ownership of the mobile-home park on May 2,

9   2005 (Garcia Decl. ¶ 4).

10         At that time, plaintiffs conducted due diligence to make sure the park was complying

11   with all federal, state, and local laws.  Plaintiffs thereby "learned that Napa Olympia MHP had

12   no historical surveys, affidavits, or other records to provide verification that at least 80 percent

13   of the Park's spaces were occupied by at least one person 55 years of age or older" (Garcia

14   Decl. ¶ 7).  According to a declaration of the park's general manager who conducted the due

15   diligence review, the park also did not have procedures in place for routinely determining the

16   occupancy of each unit, had never verified whether at least one occupant was a senior in 80

17   percent or more units, and "had never operated as" a park for seniors (*ibid.*).  Plaintiffs

18   endeavored to change the park rules so that the rules would be consistent with the park's

19   existing operation as an all-age park (*id.* ¶ 8).

20         On July 3, 2006, plaintiffs notified residents of their intent to change the rules of the

21   park to represent its status as an all-age park (Ross Decl. Exh. 3; Garcia Decl. Exh. 3).

22   Although the City asserts in its briefs that "from 2006 through 2009, numerous Seniors

23   expressed fear and concern to the City over Park conditions and possible displacement from

24   their Park units due to a Park conversion," the record only provides one letter from residents

25   dated August 7, 2009 (Br. 4; Ross Decl. Exh. 4).

26         In any event, the City enacted series of moratoria forbidding the conversion of what it

27   considered a senior park to an all-age park, beginning on July 25, 2006.  *See* Cal. Gov't Code §

28   65858(a) ("to protect the public safety, health, and welfare, [a city] may adopt as an urgency

**United States District Court**
For the Northern District of California

1   measure an interim ordinance prohibiting any uses that may be in conflict with a contemplated

2   general plan, specific plan, or zoning proposal that the legislative body, planning commission or

3   the planning department is considering or studying or intends to study within a reasonable

4   time"); (*see* Barr Decl. Exhs. 5–6, 8–12; Garcia Decl. Exhs. 4–8).  The applicable ordinances

5   first concerned the conversion of parks with 70 percent or more full-time senior residents, and

6   then began to concern the conversion of parks with 60 percent or more such residents.[1]  The

7   City notified plaintiffs by e-mail dated September 3, 2008, that the City intended to actively

8   enforce the ordinances prohibiting conversion (Compl. Exhs. 2–3; Garcia Decl. Exh. 9).

9          On November 3, 2008, plaintiffs wrote to the City to express their view that they had not

10  yet converted the park from a senior park to an all-age park "as a courtesy," during the

11  pendency of the City's ordinances (Ross Decl. Exh. 5).  On November 29, plaintiffs notified the

12  City that they planned to implement new park rules converting the park to an all-age park on

13  January 1, 2009 (*id.* Exh. 6).  Thereafter, the City wrote to local real estate agents  — as well as,

14  in once instance in the record, an individual park unit resident — to advise them to disclose to

15  prospective buyers in the park that the City's moratorium prohibited conversion of the park to

16  an all-age park (Barr Decl. Exh. 13; Garcia Decl. Exh. 10; Compl. Exh. 4).

17         On January 7, 10, and 13, 2009, the City surveyed park residents to "learn how many

18  units are occupied by at least one person aged 55 years or older" (Barr Decl. Exh. 14).  Out of

19  201 total units, contact was made with resident of 124 of the units.  Of those, 95 percent were

20  occupied by at least one senior.

21         On August 13, 2009, plaintiffs notified park residents that the park would convert to an

22  all-age park beginning on March 1, 2010 (Ross Decl. Exh. 7; Garcia Decl. Exh. 12).  The record

23  also contains a letter from park residents to the City from this time that expresses concern over

24  the conversion (Ross Decl. Exh. 4).  In response, the City held a question-and-answer session

25

26         [1] The City also adopted two additional relevant ordinances.  One required mobile-
27  home park owners to provide relocation assistance to park residents forced to vacate their
    park units if their units became for-sale units (Barr Decl. Exh. 7).  Another required
28  "senior housing projects" receiving City incentives to obtain additional approvals prior to
    converting to a "non-senior" project (*id.* Exh. 15).

**United States District Court**
For the Northern District of California

1    with park residents in November 2009.  The invitation to residents stated that "City staff will be

2    surveying residents to determine whether each home in the [park] is occupied by at least one

3    resident that is 55 years of age," and that at the session the City Community Development

4    Director would be available to answer questions "regarding the survey" (Compl. Exh. 7; Garcia

5    Decl. ¶ 17).

6          In February 2010, the City advised plaintiffs that they must, consistent with local

7    ordinances, submit a use permit application, conversion impact report, and relocation plan to the

8    City, prior to implementing any conversion (Compl. Exh. 9).  On March 2, after notice to

9    plaintiffs, the City adopted a Senior Mobile Home Park Overlay Zone, to maintain senior

10   residency status in areas that already maintain at least 80 percent senior residency (Barr Decl.

11   Exh. 1; Garcia Decl. Exh. 13; Compl. Exh. 10).[2]  Later that month, the City completed its

12   second survey of all units, which showed that, of the occupied units, 91 percent were occupied

13   by at least one senior (Barr Decl. Exh. 16).[3]

14         Plaintiffs filed this action fourteen months ago.  There has been no prior motion practice

15   in this case.  Plaintiffs claim violation of the federal Fair Housing Act.  In short, plaintiffs argue

16   that the park was never a senior park, so there is nothing to "convert," they are simply changing

17   the rules to be consistent with the park's continued practice, and the City is violating the law via

18   its ordinances.  The City counters that it has, consistent with federal, state, and local laws,

19   solely been acting to "ensure that [plaintiffs' attempted] conversion did not conflict with the

20   [city's] Housing Element polices promoting and preserving Senior affordable housing" (Br. 4).

21   The City argues that the park has always been a senior park, and that its ordinances have simply

22   been protecting seniors — consistent with federal law — from plaintiffs' attempt at conversion.

23

24
          [2] This ordinance was confirmed on a non-urgency basis on March 16, 2010 (Barr
25   Decl. Exh. 2).

26        [3] The record contains all of the survey information sheets, so this percentage was
27   verified by a recount.  Also of note, the Garcia declaration submitted by plaintiffs states
     regarding this survey that "City Code Enforcement Officers went door to door in Napa
28   Olympia looking for families with children and intimidating residents of the Park" (Decl.
     ¶ 21).

4

**United States District Court**
For the Northern District of California

**ANALYSIS**

**A.    STANDARD OF REVIEW**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and "material" only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). All reasonable inferences, however, must be drawn in the light most favorable to the non-moving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004). That said, unsupported conjecture or conclusory statements cannot defeat summary judgment. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008).

Judgment on the pleadings is properly granted after the pleadings are closed, pursuant to FRCP 12(c), when, "taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).

**B.    OVERVIEW OF THE FAIR HOUSING ACT AND
THE HOUSING FOR OLDER PERSONS EXEMPTION**

To understand the statutory context, a review of the relevant Fair Housing Act provisions is warranted. 42 U.S.C. 3601 *et seq.* Section 3604 states that it is unlawful:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

(d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

5

**United States District Court**
For the Northern District of California

Section 3617 makes it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Section 3631 sets forth penalties for whoever "by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with" rights otherwise set forth. These are the sections of the Act asserted by plaintiffs' claims.

"Familial status" means "one or more individuals (who have not attained the age of 18 years) being domiciled with– (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person." 42 U.S.C. 3602(k).

Section 3607(b) sets forth an important exemption for housing for older persons; it states (emphasis added):

> (1) Nothing in this subchapter limits the applicability of any reasonable local, State, or Federal restrictions regarding the maximum number of occupants permitted to occupy a dwelling. *Nor does any provision in this subchapter regarding familial status apply with respect to housing for older persons.*
>
> (2) As used in this section, "housing for older persons" means housing–
>
>> (A) provided under any State or Federal program that the Secretary determines is specifically designed and operated to assist elderly persons (as defined in the State or Federal program); or
>>
>> (B) intended for, and solely occupied by, persons 62 years of age or older; or
>>
>> (C) intended and operated for occupancy by persons 55 years of age or older, and–
>>
>>> (i) at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older;
>>>
>>> (ii) the housing facility or community publishes and adheres to policies and procedures that demonstrate the intent required under this subparagraph; and
>>>
>>> (iii) the housing facility or community complies with rules issued by the Secretary for verification of occupancy, which shall–
>>>
>>>> (I) provide for verification by reliable surveys and affidavits; and

6

**United States District Court**
For the Northern District of California

1

2

3

> (II) include examples of the types of policies and procedures relevant to a determination of compliance with the requirement of clause (ii).  Such surveys and affidavits shall be admissible in administrative and judicial proceedings for the purposes of such verification.

4   In other words, housing developments that qualify as housing for older persons may

5   discriminate based on familial status.

6         The Code of Federal Regulations provides clarification on the application of this

7   exception by defining what housing developments qualify as housing for older persons.  The

8   regulations state: "(a) The provisions regarding familial status in this part shall not apply to

9   housing intended and operated for persons 55 years of age or older . . . *if: . . . the housing*

10  *community or facility complies with: (i) Section 807(b)(2)(C) (42 U.S.C. 3607(b)) of the Fair*

11  *Housing Act as amended; and (ii) 24 CFR 100.305, 100.306, and 100.307*."  Examples of a

12  housing facility or community include "[a] mobile home park," and "older person" is defined as

13  "a person 55 years of age or older."  24 C.F.R. 100.304 (emphasis added).

14        To qualify, "at least 80 percent of its occupied units must be occupied by at least one

15  person 55 years of age or older."  24 C.F.R. 100.305.  The regulations set forth factors to

16  consider relevant in determining whether the housing facility or community has complied with

17  the requirement that it publish and adhere to policies and procedures that demonstrate its intent

18  to operate as housing for persons 55 years of age or older.  24 C.F.R. 100.306.  They also

19  identify methods for verification of occupancy required by the exemption for housing for older

20  persons.  24 C.F.R. 100.307.

21        **C.     THE CITY'S ORDINANCES VIOLATE THE FAIR HOUSING ACT**

22        The City of American Canyon is violating the federal Fair Housing Act by forcing the

23  owners of a mobile-home park to discriminate on the basis of familial status through a series of

24  city ordinances.  The record shows that for years the mobile-home park has had rules stating it

25  is a seniors-only park, but that it has not adhered to requirements of the Fair Housing Act to

26  qualify as housing for older persons.  This order finds that the housing for older persons

27  exemption has never applied to the facility in question.  As new owners, plaintiffs attempted to

28  amend the rules to make it clear that the park was open to all applicants on a non-discriminatory

7

**United States District Court**
For the Northern District of California

1  basis.  Instead, the City forced them to violate federal law by directing them specifically to lock

2  in their discriminatory rule.  The City has caused the park owners to be subject to suit by

3  residents for violating federal law, when they are only attempting to cease violating it — as they

4  have been for years now.  The City ordinances are illegal and must be enjoined.

5  Specifically, this order holds that the City's actions in enacting and enforcing the

6  ordinances violate the Fair Housing Act by "mak[ing] unavailable . . . dwelling[s] to any person

7  because of . . . familial status," 42 U.S.C. 3604(a); by "discriminat[ing] against any person in

8  the terms, conditions, or privileges of sale or rental of a dwelling . . . because of . . . familial

9  status," 42 U.S.C. 3604(b); and by "interfer[ing] with any person in the exercise or enjoyment

10  of, or on account of his having exercised or enjoyed, . . . any right granted or protected by

11  section 3603, 3604, 3605, or 3606 of this title," 42 U.S.C. 3617.

12  The restrictions contained in the subject ordinances necessarily impede non-seniors from

13  obtaining housing in the mobile-home park and thus discriminate on the basis of familial status.

14  As reviewed above, the City's moratoria forbid the conversion of what it considered a senior

15  park to an all-age park, beginning on July 25, 2006.  The City then adopted a Senior Mobile

16  Home Park Overlay Zone to maintain senior residency status.  The record shows that the City

17  was enforcing these ordinances by writing letters to local real estate agents and mobile-park

18  residents, putting pressure on plaintiffs to comply, and conducting surveys of the residents to

19  attempt to document the applicability of the ordinances.

20  In enacting and enforcing each ordinance, the City made park units unavailable to non-

21  seniors based on familial status, discriminated against them by mandating the terms and

22  conditions of sale and rental of dwellings based on familial status, and interfered with their

23  enjoyment of their right to be free from discrimination.  Because each ordinance has purported

24  to require or permit actions that are discriminatory under the Fair Housing Act, each has been

25  invalid during all relevant periods.  42 U.S.C. 3615.

26  The City argues that its ordinances do not violate the Fair Housing Act because they do

27  not prevent non-seniors from moving into the park units — they "just" require that the park

28  maintain a certain percentage residency of seniors and turn away non-seniors who are not living

**United States District Court**
For the Northern District of California

1    with one.  That is not the law.  The ordinances leave less housing for families without members

2    age 55 or older.  By the City's logic, almost any restriction short of a prohibition on housing

3    availability in certain areas would be permissible because — so the argument goes — anyone

4    can simply move in with a senior in tow.  The Fair Housing Act does not include such a

5    loophole.

6        In addition, the housing for older persons exemption does not and has not applied.  "As

7    the HOPA exemption is an affirmative defense, [defendant] bears the burden of establishing that

8    [the subject development] satisfies each of the HOPA requirements."  *Balvage v. Ryderwood*

9    *Improvement & Serv. Ass'n, Inc.*, — F.3d —, 2011 WL 1570377, at *8 (9th Cir. Apr. 27, 2011)

10   (citations omitted).  "[E]xemptions from the Fair Housing Act are to be construed narrowly, in

11   recognition of the important goal of preventing housing discrimination."  *Id.* at *7 (citations

12   omitted).  The City, moreover, must demonstrate that all of the exemption elements were

13   satisfied at the time the alleged discriminatory acts took place.  *Id.* at *8.

14       The City has offered no evidence that during this period plaintiffs adhered to the policies

15   or maintained any procedures demonstrating its intent to provide housing for persons 55 years

16   or older.[4]  It is the City's burden and such adherence is required to qualify for the exemption, so

17   this fact is dispositive.

18       An independent review of the record also shows that it contains *no evidence of*

19   *adherence* to policies and procedures demonstrating intent to provide housing for persons 55

20   years of age or older during plaintiffs' ownership of the mobile-home park — and hence during

21   the time of the alleged discriminatory acts.  Moreover, the record contains *no evidence of age-*

22   *verification procedures* to ensure compliance with the prerequisites for qualifying as housing

23

24       [4] As reviewed above, in order to establish the exemption, the City must present
         evidence that the park owners both published and adhered to policies and procedures

25       demonstrating its intent to provide housing for persons 55 years of age or older.  42
         U.S.C. 3607(b)(2)(C).  It is not enough that the park published a policy demonstrating its

26       intent to provide housing for persons 55 years of age or older if it did not adhere to a
         procedure demonstrating the same intent.  *See United States v. City of Hayward*, 36 F.3d

27       832, 837 (9th Cir. 1994) (cited favorably in *Balvage*).  Failing to satisfy any of the
         exemption requirements deprives an entity of the ability to qualify as 55-or-older housing

28       for older persons.

**United States District Court**
For the Northern District of California

1   for older persons.  For example, there is no evidence that plaintiffs took action to verify the ages

2   of the residents.  True, *the City* initiated the surveys reviewed above *after the ordinances had*

3   *been enacted*, seemingly to further the City's goal of enforcement.  But, these surveys do not

4   satisfy the requirements of Section 3607(b)(2) in that they were performed after the allegedly

5   discriminatory acts were taken, do not demonstrate an intent on the part of *the park* to operate a

6   housing development for older persons, and were not sufficiently reliable or consistent to ensure

7   the park's compliance with the exemption provisions.  In short, there were not age-verification

8   policies in place or a policy or procedure *adhered to* that would demonstrate intent to provide

9   housing for persons 55 years of age or older in the park.

10          The City misinterprets the nature of the housing for older persons exemption under the

11   Fair Housing Act.  Its primary argument is that because zoning is a state and local concern, the

12   Fair Housing Act cannot restrict such zoning.  This is obviously incorrect, in that, pursuant to

13   the Supremacy Clause, federal law preempts conflicting state and local laws.  This is a basic

14   hornbook principle.[5]

15          The City's briefs consist of a refrain that, *first*, there is no preemption so the Fair

16   Housing Act does not apply, and therefore, *second*, "the City need not and does not assert

17   compliance with HOPA as an affirmative defense" (Opp. 14).  The City thus ignores the

18   Supremacy Clause and abdicates its burden to qualify for an exemption.  For this reason and

19   contrary to the City, the reasoning set forth in *Gibson v. County of Riverside*, 181 F. Supp. 2d

20   1057 (C.D. Cal. 2002), is persuasive, and consistent with the holding reached by this order.  The

21   City points to the following sentence as a purported shibboleth that *Gibson* is not on point: that

22   the order would not decide "the abstract permissibility, under state and federal law, of

23

24

25          [5] Various decisions cited by the City on this point are irrelevant.  In *Taylor v.
Rancho Santa Barbara*, 206 F.3d 932, 936–37 (9th Cir. 2000), our court of appeals
simply held that the amendment to the Fair Housing Act that prohibited discrimination
26   based on familial status and created the housing for older persons exemption did not
violate equal protection.  *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536
27   U.S. 424, 442 (2002), which concerned an entirely different statutory scheme, expressly
did not reach "the question whether [the] particular [local] regulations [at issue] . . . fall
28   within [the federal statute's] compass."

10

1  age-based zoning or the constitutionality of the County's age-based zoning scheme." *Id.* at

2  1073. Indeed, district courts may not decide abstract permissibilities. Instead, *Gibson* analyzed

3  the *application* of federal (and state) law to the zoning scheme therein. *That* is the reasoning

4  that is applicable and persuasive here.

5      By its reasoning, the City implies that it is *plaintiffs'* burden to demonstrate that they do

6  *not* qualify for the housing for older persons exemption under the Fair Housing Act. The City

7  has it backward. Congress did not put the housing for older persons exemption on the same

8  footing as the prohibition against familial-status discrimination. The prohibition against

9  familial-status discrimination is the primary goal, and housing for older persons is an exception.

10  For this reason, and once again as stated above, the exception must be construed narrowly, and

11  its requirements must be strictly met. The City has not met *its* burden to show that the park

12  qualified for the exemption. The housing for older persons exemption does not apply.

13      The plain meaning of the ordinances treat families without senior members differently

14  from other people seeking to live in the mobile-home park. The ordinances conflict with and

15  are thus preempted by the Fair Housing Act's prohibition against discrimination on the basis of

16  familial status. On this basis, this order will deny the City's motion for judgment on the

17  pleadings or summary judgment and will grant plaintiffs' motion for partial summary judgment.

18  Injunctive relief will be granted based on the foregoing violations of the Fair Housing Act. 42

19  U.S.C. 3613(c)(1).

20      **D.   STANDING AND RIPENESS**

21      The City argues that plaintiffs lack standing because they have not pointed to any

22  evidence of injury on the basis of the Fair Housing Act violation. To have standing to bring suit

23  in federal court:

24      First, the plaintiff must have suffered an "injury in fact"—an invasion of a
        legally protected interest which is (a) concrete and particularized, and (b) "actual

25      or imminent, not 'conjectural' or 'hypothetical[.]'" Second, there must be a
        causal connection between the injury and the conduct complained of—the injury

26      has to be "fairly . . . trace[able] to the challenged action of the defendant, and not
        . . . th[e] result [of] the independent action of some third party not before the

27      court." Third, it must be "likely," as opposed to merely "speculative," that the
        injury will be "redressed by a favorable decision."

28

11

**United States District Court**
For the Northern District of California

1    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and footnote omitted).

2    Standing to sue is a legal issue that may be decided on a motion for summary judgment in the

3    absence of material disputes of fact.  In the case of *Lujan v. National Wildlife Federation*, our

4    Supreme Court set forth the standards for considering a challenge to standing at the summary

5    judgment stage.  The Court stated that "the purpose of Rule 56 is to enable a party who believes

6    there is no genuine dispute as to a specific fact essential to the other side's case to demand at

7    least one sworn averment of that fact before the lengthy process of litigation continues."  497

8    U.S. 871, 888–89 (1990).

9         The City argues that plaintiffs neglect to offer evidence of specifics of such injury in our

10   case.  For example, the City points to a lack of evidence showing that plaintiffs have lost profits

11   as a result of these ordinances, or of evidence that plaintiffs have had to turn away applicants

12   from their park due to the ordinances.  Nevertheless, the Garcia declaration evidences injury

13   caused by the ordinances, as well as redressability.  Restrictions that have been placed on

14   plaintiffs' management of their park constitute the necessary injury that is a clear product of the

15   ordinances themselves and that would be redressed by a favorable ruling in this action.

16   Moreover, it is also an injury that these ordinances subject plaintiffs to suit by their residents by

17   requiring that plaintiffs violate federal law.

18        For this reason, the City's motion to exclude evidence — which concerns an alleged

19   failure to provide disclosures or discovery on the subject of more specific monetary or

20   emotional distress damages — and its request for judicial notice in support are **DENIED AS**

21   **MOOT**.[6]

22        The City also argues that plaintiffs' claims are not ripe because plaintiffs do not allege

23   or demonstrate that they used available procedures provided for in local law to obtain relief or

24   that the City has enforced the challenged ordinances to deny any families housing in the mobile-

25

26        [6] At the conclusion of the hearing on the instant motion, counsel for the City
27   objected that plaintiffs' counsel had not submitted a sworn record in support of their
     motion.  The parties were granted leave to file further briefing on this point.  This order
28   finds that plaintiffs' counsel is in fact relying on a properly sworn record, and this order
     relies on those proper submissions and not the submissions filed after the hearing.

**United States District Court**
For the Northern District of California

1    home park.  The former is irrelevant.  The ordinances are on the books, and federal relief is not

2    beholden to recourse under state law.  The latter is a mischaracterization of the record.  True,

3    there is no evidence that the City *evicted* a park resident on the basis of the ordinances.  But the

4    City has enforced these ordinances by writing letters to local real estate agents and mobile-park

5    residents, putting pressure on plaintiffs to comply, and conducting surveys of the residents to

6    attempt to document the applicability of the ordinances.  As such, plaintiffs' claims are ripe.

7    There is no basis to stop relief in its tracks.

8                                                          **CONCLUSION**

9            For the foregoing reasons, plaintiffs' motion for partial summary judgment is **GRANTED**,

10   and defendant's motion for judgment on the pleadings or summary judgment and to exclude

11   evidence are **DENIED**.[7]  Plaintiffs' motion requested partial summary judgment for violation of

12   the Fair Housing Act for familial-status discrimination and disparate treatment.  This order has

13   held that the City has violated Title 42, United States Code, Sections 3604(a), 3604(b), and

14   3617, that each ordinance has been invalid during all relevant periods pursuant to Section 3615,

15   and that injunctive relief is warranted and will be granted for these violations of the Fair

16   Housing Act pursuant to Section 3613(c)(1).

17           Plaintiffs shall file a proposed form of judgment under FRCP 54(b) for injunctive and

18   declaratory relief consistent with the foregoing analysis and conclusions no later than **SEVEN**

19   **CALENDAR DAYS** from the date of this order.  Both sides shall meet and confer on the form of

20   judgment and endeavor to stipulate to its form and to what claims remain for trial based on this

21   order.  If the parties are unable to agree to a proposed judgment, defendant shall file an

22   opposition to plaintiffs' proposed judgment no later than **FOUR CALENDAR DAYS** thereafter.

23

24

25

26

27           [7] The parties' requests for judicial notice submitted in support of their briefing on
     their cross-motions either concern filings already in the record for which judicial notice is
28   unnecessary or do not concern adjudicative facts, and as such the requests are **DENIED AS**
     **MOOT** (Dkt. Nos. 51, 62, 68, and 76).

                                                                13

United States District Court
For the Northern District of California

1    To allow time for this process, the pretrial conference is continued to **JUNE 27, 2011, AT**

2    **3:00 P.M.**  The trial date set for June 20 is **VACATED**, and a new trial date will be set at the

3    pretrial conference.

4

5    **IT IS SO ORDERED.**

6

7    Dated:  June 6, 2011.

8                                                    WILLIAM ALSUP
                                                     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28